*This opinion is subject to revision before final publication in the Pacific Reporter*

**2026 UT 21**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH, in the interest of J.M.,
a person under eighteen years of age

J.M.,
*Appellant,*

*v.*

STATE OF UTAH,
*Appellee.*

No. 20241361
Heard January 30, 2026
Filed July 23, 2026[*]

On Certification from the Court of Appeals

Third District Juvenile Court, Salt Lake County
The Honorable David L. Johnson
No. 1240189

Attorneys:

Monica Maio, William R. Russell, Shauntel K. Black,
Sophie C. Hwang, South Salt Lake, for appellant

Derek E. Brown, Att'y Gen., Jeffrey D. Mann, Connor Nelson,
Asst. Solics. Gen., Salt Lake City, for appellee

JUSTICE NIELSEN authored the opinion of the Court, in which
JUSTICE PETERSEN and JUDGE OLIVER joined.

---

[*] As of January 31, 2026, "The Supreme Court consists of seven justices." UTAH CODE § 78A-3-101(1). Pursuant to Utah Supreme Court Standing Order No. 18, this court sat and rendered judgment in this matter as a division of five justices.

CHIEF JUSTICE DURRANT authored a dissenting opinion, in which ASSOCIATE CHIEF JUSTICE POHLMAN joined.

JUSTICE HAGEN stepped down from the court before this case was decided. COURT OF APPEALS JUDGE AMY J. OLIVER, having reviewed the briefs and listened to a recording of the oral argument, substituted for JUSTICE HAGEN and participated fully in this decision.

———————

JUSTICE NIELSEN, opinion of the Court:

## INTRODUCTION

¶1 J.M. and her sisters started a fight with another student at their high school during which J.M. allegedly shoved a teacher into a wall and punched the student. The school's resource officer referred the case to juvenile court, who in turn sent the case to a juvenile probation officer to screen for a nonjudicial adjustment—a type of diversion that if complied with avoids having a delinquency petition filed against the juvenile. Nonjudicial adjustments are not available for juveniles 12 and over facing felony offenses. But the probation officer determined that the referred offense (assault) was a misdemeanor and that J.M. otherwise qualified for a nonjudicial adjustment, so he offered her one. J.M. accepted an agreement that required her to perform community service and pay restitution.

¶2 After J.M. finished her community service hours but before restitution was resolved, the State—disagreeing with the misdemeanor classification, and thus with J.M.'s eligibility for a nonjudicial adjustment—filed a petition against J.M. alleging three felony offenses (aggravated assault, assault, and riot) stemming from the same underlying fight.

¶3 J.M. moved to dismiss the petition, arguing that the prosecutor could not file a petition against her after she had accepted and substantially complied with the nonjudicial adjustment agreement. The juvenile court denied J.M.'s motion, ruling that no rule or statute prevented the State from filing what the court saw as a new referral.

¶4 On interlocutory appeal, J.M. argues that the juvenile court wrongly interpreted the statutes governing nonjudicial adjustments. In her view, the statutes governing them give broad authority to the juvenile probation officer to decide the minor's

eligibility for nonjudicial adjustment, leaving the prosecutor little authority to say otherwise.

¶5 We conclude that the juvenile court correctly denied J.M.'s motion to dismiss the petition. Nothing in the Juvenile Code prohibits a prosecutor from filing a petition when a nonjudicial adjustment has been improperly offered. A minor over 12 is not eligible for a nonjudicial adjustment when the conduct involves a disqualifying offense, such as a felony. And whether an alleged offense is disqualifying is an objective inquiry that is not dependent on either the referral or the juvenile probation officer's assessment. Because J.M. had not challenged the prosecutor's characterization of the offense—only the prosecutor's right to review the referral—we affirm the denial of the motion to dismiss.

## BACKGROUND[1]

*A. The Allegations*

¶6 J.M. and two of her sisters are high school students. One day in March 2024, J.M. and her sisters started a fight with another student at school.

¶7 In the morning on the day of the fight, the student told J.M. that she wanted J.M. and her sisters to "leave [the student] alone because they are constantly picking on her, laughing at her, and telling her that she is ugly." The student had previously "tried to befriend" the sisters, but they "would pick on her because of her thick accent." The student claimed that the sisters "would walk in a group at school, point at [the student], and laugh at her."

¶8 Later that day, near the end of the lunch period, J.M. and her sisters "were walking in a group and called out for [the student] to 'come here.'" The student told the sisters "that she did not want to speak to them and that they would have to walk to her if they

---

[1] "On interlocutory review, we recount the facts as alleged and in a light most favorable to the ruling below." *State v. Najera*, 2025 UT 61, n.1, 585 P.3d 1186 (cleaned up). We emphasize that J.M. did not admit guilt when she accepted the nonjudicial adjustment agreement and that the allegations against J.M. have not been proved. *See State v. Jolley*, 2025 UT 9, n.1, 568 P.3d 1040; UTAH CODE § 80-6-304(3) (stating that a "juvenile probation officer may not predicate acceptance of an offer of a nonjudicial adjustment on an admission of guilt").

wanted to speak to her." J.M. and her sisters approached the student.

¶9   One of the sisters pushed the student. A teacher tried to intervene by attempting to "stay between them" and telling one of the sisters "to leave." But J.M. "shoved [the teacher] against the wall," and the sisters followed the student up a set of stairs. While following the student, the sisters "yelled derogatory names at her."

¶10  The student walked outside, but the sisters continued following her. Once outside, one of J.M.'s sisters "shoved" the student. The student set down her backpack so that she could "defend herself." J.M.'s sister began punching the student, and J.M. eventually "joined in and also began punching" the student. The student was then "thrown on the ground and felt someone kicking her." Several other students stood around watching the fight, "egging the girls on and taking video of the fight." School administrators eventually showed up, separating the girls and ending the fight.

¶11  The school resource officer was told of the fight. When she went to the area outside where the fight took place, she saw administrators walking the sisters to the office. The officer overheard one of J.M.'s sisters "state several times that she 'beat' [the student's] 'ass' and that [the student] got what she deserved."

¶12  The extent of the injuries to both the teacher and the student became clear after the fight. The teacher was experiencing pain in his back, so he went to the emergency room later that night. There, the teacher discovered that he had a fractured rib. As for the student, the school resource officer saw her the day after the fight and observed a bruise under her right eye, a scratch mark on her cheek, and a swollen thumb.

¶13  The school resource officer filed a police report and referred the case to the juvenile court. On page one of the report, the officer specifically listed only one offense—assault. In the narrative section of the police report, the officer wrote that based on the teacher's injuries, the officer "believe[d] there [was] evidence to support a class A misdemeanor assault charge." But the officer also noted in that section that there was "enough evidence to support that [the sisters] engaged in violent conduct knowingly or recklessly creating a substantial risk of causing public alarm."

*B. The Juvenile Court Case*

¶14 Under the Utah Juvenile Code, when a juvenile court receives a referral for an offense committed by a minor that is within the court's jurisdiction, the court sends the case to a juvenile probation officer to "make a preliminary inquiry . . . to determine whether the minor is eligible to enter into a nonjudicial adjustment." UTAH CODE § 80-6-303.5(1).[2] J.M.'s referral was screened by a juvenile probation officer, who conducted a risk and needs assessment. The juvenile probation officer determined that the referred offense was a misdemeanor and that J.M. qualified for a nonjudicial adjustment agreement.

¶15 J.M. met with the juvenile probation officer and accepted a nonjudicial adjustment agreement, under which she was required to perform five hours of community service and pay restitution. J.M. promptly completed her community service hours, but restitution was scheduled to remain under advisement for several months.

¶16 Shortly after J.M. completed her community service hours, the State filed a delinquency petition against J.M. alleging three felony offenses for the same fight: aggravated assault on the teacher resulting in substantial bodily injury with a group enhancement (a first-degree felony if committed by an adult); assault on the student resulting in substantial bodily injury with a group enhancement (a third-degree felony if committed by an adult); and riot with injury (a third-degree felony if committed by an adult).

¶17 J.M. filed a motion to dismiss the petition. J.M. argued that the prosecutor was barred from filing a petition against her after she had accepted and substantially complied with the nonjudicial adjustment agreement. The State opposed the motion, arguing that J.M. was "not eligible for a nonjudicial adjustment" for felony offenses and that nothing prohibited the prosecutor from filing a petition to correct an unauthorized nonjudicial adjustment.

¶18 The juvenile court denied J.M.'s motion to dismiss the petition. The court ruled that "nothing in the law or rules" prevents

---

[2] While the 2024 version of the Utah Code applies and the legislature has made some subsequent changes to the code, no substantive changes are applicable here, nor do any of the changes impact our analysis. Thus, we cite the current version of the code throughout this opinion for both convenience and clarity.

the State from screening cases referred to the juvenile court, even after the referral is working its way through the nonjudicial adjustment process. The court reasoned that the "State has the right to submit a new referral on these allegations, which it did by filing the . . . petition."[3] The court concluded that "the petition [was] not in violation of the Juvenile Act, the [Utah Rules of Juvenile Procedure,] or any other controlling authority."

¶19  J.M. filed a petition for interlocutory review of the juvenile court's order denying her motion to dismiss, which the court of appeals granted. The court of appeals then certified the case to this court. We have jurisdiction under Utah Code section 78A-3-102(3)(a)(ii).

## ISSUE AND STANDARD OF REVIEW

¶20  On appeal, J.M. contends that the juvenile court erred in denying her motion to dismiss because it incorrectly interpreted the statutes governing nonjudicial adjustments. The grant or denial of a motion to dismiss a charging instrument is a question of law that is reviewed for correctness. *See Salt Lake City v. Peterson*, 2010 UT 64, ¶ 6, 245 P.3d 197. The meaning of the nonjudicial adjustment statute is also a question of law. *See Armenta v. Unified Fire Auth.*, 2025 UT 26, ¶ 11, 573 P.3d 1283.

## ANALYSIS

¶21  The Utah Juvenile Code creates a process for referring cases to juvenile courts and determining minors' eligibility for a nonjudicial adjustment that involves specific procedures, timelines, and criteria. To properly interpret the statutes governing nonjudicial adjustments, we must first look at the context in which they appear. *See Grillone v. Peace Officer Standards & Training Council*, 2025 UT 7, ¶ 36, 567 P.3d 576 ("When our court engages in statutory interpretation, we do not look at the pertinent provision in isolation. We instead examine the statute's plain language in light of the relevant context of the statute." (cleaned up)).

¶22  The context here is how juvenile court referrals are made, and when they qualify—or not—for a nonjudicial adjustment. A juvenile court is informed that an offense has occurred within its jurisdiction when it receives a referral. *See* UTAH CODE §§ 80-6-

---

[3] We do not agree with the juvenile court that the petition constituted a "new referral," but that mischaracterization does not affect our analysis.

102(11), -303.5(1). A referral can come to the juvenile court as a formal written report, a citation, or a transfer from another court. *See id.* § 80-6-301(1) ("formal referral"); *id.* § 80-6-302(2) ("citation"); *id.* § 80-6-303(2)(b)(ii) ("transfer"); *id.* § 80-6-102(14) (defining "[r]eferral"). A referral is often made by "a peace officer, or a public official of the state, a county, a city, or a town." *Id.* § 80-6-301(1). But for certain school-related offenses, the referral can be made by a "peace officer, public official, school district, or school." *Id.* § 80-6-301(3). The timeline for filing a referral depends on whether the minor is taken into temporary custody and whether the referral is in the form of a citation. *See, e.g., id.* §§ 80-6-301(1)–(2), -302(2).

¶23　A nonjudicial adjustment is a diversion process that allows a case to be closed by a juvenile probation officer without a formal adjudication or a delinquency petition being filed against the minor in court. *See id.* §§ 80-6-303.5, -304, -304.5. After a juvenile court "receives a referral for an offense committed by a minor . . . , a juvenile probation officer shall make a preliminary inquiry . . . to determine whether the minor is eligible to enter into a nonjudicial adjustment." *Id.* § 80-6-303.5(1). The juvenile probation officer must offer a nonjudicial adjustment to a minor under the following circumstances:

> (4)(a) the minor:
>
>> (i) is referred for an offense that is a misdemeanor, infraction, or status offense;
>>
>> (ii) has no more than two prior adjudications; and
>>
>> (iii) has no more than two prior unsuccessful nonjudicial adjustment attempts;
>
> (b) the minor is referred for an offense that is alleged to have occurred before the minor was 12 years old; or
>
> (c) the minor is referred for being a habitual truant.

*Id.* § 80-6-303.5(4)(a)–(c). If the minor does not meet the criteria described in subsection (a), a juvenile probation officer may still offer a nonjudicial adjustment so long as the referral does not involve a disqualifying offense. *Id.* § 80-6-303.5(7). Disqualifying offenses include any felony offense alleged to have occurred when the minor was 12 years old or older. *Id.* § 80-6-303.5(8)(a)(i). If the referral involves such an offense, a juvenile probation officer "may not offer a minor a nonjudicial adjustment." *Id.*

¶24 The statutory scheme contemplates that some referrals are to be reviewed by prosecutors. A prosecuting attorney "shall review a referral to the juvenile court" under the following circumstances:

> (a) the prosecuting attorney is requested to review the referral [by a juvenile probation officer];
>
> (b) the minor fails to substantially comply with a condition agreed upon as part of the nonjudicial adjustment; or
>
> (c) the minor is not offered or declines a nonjudicial adjustment.

*Id.* § 80-6-304.5(1). "Upon review of a referral . . . , the prosecuting attorney shall: (i) dismiss the referral; (ii) send the referral back to the juvenile probation officer for a new attempt at a nonjudicial adjustment if the minor's case is eligible for a nonjudicial adjustment . . . ; or (iii) . . . file a petition with the juvenile court." *Id.* § 80-6-304.5(2)(a).

¶25 Before a prosecuting attorney may file a petition against a minor, the following circumstances must be met:

> (a) the prosecuting attorney has statutory authority to file the petition . . . ; and
>
> (b) (i) the minor is not eligible for a nonjudicial adjustment . . . ;
>
> (ii) the minor declines a nonjudicial adjustment;
>
> (iii) the minor fails to substantially comply with the conditions agreed upon as part of the nonjudicial adjustment; or
>
> (iv) the minor fails to respond to the juvenile probation officer's inquiry regarding eligibility for or an offer of a nonjudicial adjustment after being provided with notice for preliminary inquiry.

*Id.* § 80-6-304.5(5). Additionally, a prosecutor "may only file a petition . . . upon reasonable belief that: (a) the charges are supported by probable cause; (b) admissible evidence will be sufficient to support adjudication beyond a reasonable doubt; and (c) the decision to charge is in the interests of justice." *Id.* § 80-6-304.5(3).

¶26   With this framework in mind, we turn to J.M.'s argument that the juvenile court misinterpreted the statutes governing nonjudicial adjustments. "When faced with a question of statutory interpretation, our primary goal is to evince the true intent and purpose of the [l]egislature." *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863 (cleaned up). "The best evidence of the legislature's intent is the plain language of the statute itself." *Id.* (cleaned up). "If a statute's meaning can be discerned from its [plain] language, we don't go looking for non-textual interpretive tools to use." *Armenta v. Unified Fire Auth.*, 2025 UT 26, ¶ 19, 573 P.3d 1283.

¶27   The parties disagree over the scope of authority granted to the players in the juvenile justice system. J.M. argues that the statutes governing nonjudicial adjustments give authority to the juvenile probation officer to "'make a preliminary inquiry'" on the minor's eligibility for a nonjudicial adjustment and give only "very limited authority" to the prosecutor to review a referral and file a petition. (Quoting UTAH CODE § 80-6-303.5(1).) J.M. focuses on the three circumstances under which a "prosecuting attorney shall review a referral." *See id.* § 80-6-304.5(1). Those circumstances are (1) when "the prosecuting attorney is requested to review the referral" by a juvenile probation officer, (2) when "the minor fails to substantially comply with a condition agreed upon as part of the nonjudicial adjustment," or (3) when "the minor is not offered or declines a nonjudicial adjustment." *Id.* Because none of these circumstances were triggered, J.M. contends that the prosecutor was "precluded . . . from reviewing the referral and filing a petition."

¶28   The State counters that a "prosecutor has broad statutory authority to file a petition 'to commence a proceeding against a minor for an adjudication of an alleged offense,'" except in certain enumerated circumstances. (Quoting *id.* § 80-6-305(1).) And, as the State points out, a juvenile probation officer has no authority to offer a minor a nonjudicial adjustment when "the referral involves" an offense "that is . . . a felony offense." *Id.* § 80-6-303.5(8)(a)(i). If the referral involves a felony offense and the juvenile probation officer mistakenly offers a nonjudicial adjustment, the State argues that the prosecutor has authority to step in and correct the mistake.

¶29   We agree with the State. The statute governing when a juvenile probation officer can offer a nonjudicial adjustment has a front-end limit: it is not available for any felony offense. *Id.* ("The

juvenile probation officer may not offer a minor a nonjudicial adjustment if the referral involves: an offense alleged to have occurred when the minor was 12 years old or older that is: a felony offense . . . ."). That limit is objective—the referred offense is either a felony under the law, or it is not. While the juvenile probation officer has authority to "make a preliminary inquiry . . . to determine whether the minor is eligible to enter into a nonjudicial adjustment," UTAH CODE § 80-6-303.5(1), nothing in that statute makes that preliminary inquiry determinative. Nor does it make eligibility dependent upon the crime identified in the referral.

¶30 The legislature could have limited prosecutorial discretion based on the referral or the preliminary inquiry as the dissent suggests, but we don't think that it did so here. The disagreement with the dissent comes down largely to a matter of emphasis in section 303.5(8)'s prohibition. The dissent emphasizes that "*the referral*" cannot "involve[] . . . a felony offense," and reasons from this that what matters is not what an objective inquiry reveals, but on what the referral document subjectively says. *See infra* ¶¶ 49–55. But to "involve" something in the relevant sense here is "to have [something] within or as part of itself"; "to require as a necessary accompaniment." *Involve*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/involve (last visited July 1, 2026); *see also Involve*, DICTIONARY.COM, https://www.dictionary.com/browse/involve (last visited July 1, 2026) (defining "involve" as "to include [it] as a necessary circumstance, condition, or consequence; imply; entail"). Whether a referral *involves*—that is, includes or entails—a felony offense is an objective question that turns on what the law says, not the officer's subjective classification in the referral. We thus see greater significance (and place our corresponding emphasis) on the second portion: "the referral" cannot "*involve*[] . . . *a felony offense*." That is, the offense underlying the referral objectively cannot be a felony.

¶31 The dissent also points out that the nonjudicial adjustment structure excludes the prosecutor from the screening and compliance processes—at least, when the juvenile accepts and complies with the adjustment—and posits from this that the legislature intended to bar the prosecutor from later second-guessing the officer's determination. *See infra* ¶¶ 47–48, 52–56. In a world in which prosecutors had otherwise very limited charging discretion, that reading might make sense. But we don't inhabit that world.

¶32 Generally speaking, prosecutors have broad discretion to file, or not file, charges. *See* UTAH CODE § 17-68-503 (providing public prosecutor pretrial duties); *see also Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) ("[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file . . . generally rests entirely in [the prosecutor's] discretion."); *State v. Carter*, 578 P.2d 1275, 1277 (Utah 1978) ("[D]iscretion rests in the prosecutor in every case as to whether or not to charge a violation of a criminal statute."). Altering that discretion would be a significant change. And if the legislature had intended to work such a significant change, we would expect it would make that change in clear terms. *See Burton v. Chen*, 2023 UT 14, ¶ 40 n.5, 532 P.3d 1005 (explaining that "we don't normally expect major changes to the established legal landscape to be accomplished by the insertion of an ambiguous phrase" or without "textual clues about [the legislature's] intent"). For the reasons just discussed, the legislature did not do that.

¶33 Because the question of whether an alleged offense is disqualifying is an objective inquiry, and given the larger context of broad prosecutorial discretion, neither the referral nor the juvenile probation officer's assessment controls. Rather, a prosecutor may file a petition so long as she has statutory authority to do so and the minor is ineligible for a nonjudicial adjustment. UTAH CODE § 80-6-304.5(5).

¶34 That said, the statutory scheme does not leave minors entirely at the mercy of the prosecutor's characterization of the alleged offense. If a minor disagrees with a prosecutor's assessment that a referral involves a disqualifying offense, the minor can file a motion to dismiss the petition. If the juvenile court disagrees with the prosecutor's assessment and rules that "the minor is eligible for a nonjudicial adjustment," the juvenile court retains authority to "refer the case to the juvenile probation officer for another offer of nonjudicial adjustment." *Id.* § 80-6-304.5(6).

¶35 But, at this point, J.M. has not challenged the prosecutor's characterization of the offense. Rather she argues only that the prosecutor was not at liberty to file a petition once the juvenile probation officer offered a nonjudicial adjustment and J.M. accepted and substantially complied with it. Because we conclude

that the probation officer's preliminary assessment is not determinative and the prosecutor is free to file a petition when a nonjudicial adjustment has been improperly offered, the juvenile court correctly denied J.M.'s motion to dismiss the petition.

## CONCLUSION

¶36 The juvenile court did not err in denying J.M.'s motion to dismiss. Affirmed.

––––––––––––––––––

CHIEF JUSTICE DURRANT, dissenting:

¶37 This case is our first opportunity to interpret Utah's nonjudicial adjustment statutes. These statutes were the product of broad, landscape-level juvenile justice reforms in 2017.[4] As the juvenile court explained in its order, the data supporting those reforms revealed that most offenses were low-level and that youth exposed to formal court processes were more likely to commit future offenses. That pre-reform system resulted in a large use of public resources but had limited success at improving public safety or holding juvenile offenders accountable.[5] Based on stakeholder input spanning the juvenile justice system, including prosecutors, the juvenile justice system shifted to a front-loaded, diversion-first model.[6]

¶38 In the reformed system, a case begins when a minor is formally referred to the juvenile court by law enforcement, a

––––––––––––––––––

[4] *See generally Utah's 2017 Juvenile Justice Reform Shows Early Promise*, PEW CHARITABLE TRS. (May 20, 2019), https://www.pew.org/en/research-and-analysis/issue-briefs/2019/05/utahs-2017-juvenile-justice-reform-shows-early-promise; *Reshaping Juvenile Justice in Utah*, CRIME & JUST. INST., (Apr. 2019), https://www.crj.org/assets/2019/04/Utah-2019-Reshaping-Juvenile-Justice.pdf.

[5] *See Utah Juvenile Justice Working Group Final Report Executive Summary*, UTAH JUV. JUST. WORKING GRP., (Dec. 2026) https://justice.utah.gov/wp-content/uploads/Utah-JJ-Report-Executive-Summary.pdf.

[6] The multi-stakeholder Utah Juvenile Justice Working Group was jointly created by Utah's three branches of government. It made fifty-five recommendations, which resulted in H.B. 239. *Id.; see also* Juvenile Justice Amendments, H.B. 239, 2017 Leg., Gen. Sess. (Utah 2017).

school, or certain other parties. Then, a juvenile probation officer—who is part of the juvenile court, not the prosecutor's office—screens the case and can perform a risk assessment. As long as the case meets certain criteria, the probation officer must offer a nonjudicial adjustment.[7] A nonjudicial adjustment is a diversion agreement, which may require community service, counseling, financial penalties, or other conditions tailored to the case and the juvenile.[8]

¶39 In some situations, the probation officer must refer the case to the prosecutor.[9] The prosecutor may then either dismiss the case, send it back for a nonjudicial adjustment, or file formal charges through a delinquency petition.[10] A delinquency petition begins an adjudicatory proceeding, which is a formal court process, classified as a civil case, not a criminal case, and is subject to its own unique rules of procedure.[11] If a court adjudicates a juvenile as delinquent, the proceeding ends with a disposition order.[12]

¶40 The majority concludes that within this reformed system, a prosecutor has inherent discretion to file a delinquency petition and move a juvenile into an adjudicatory proceeding, even after the minor substantially completes a nonjudicial adjustment but before the case is closed.[13] We disagree.

¶41 Instead, we conclude that the legislature curtailed that prosecutorial discretion through the language of the nonjudicial adjustment statutes. Like the majority, we rely on the plain language of those statutes. In our view, that language is unambiguous and expressly restricts when prosecutors can supersede nonjudicial adjustments in the revised statutory scheme.

---

[7] *See infra* ¶ 45.

[8] *See* UTAH CODE § 80-6-304(1).

[9] *See infra* ¶¶ 47–48.

[10] *See infra* ¶¶ 47–48.

[11] *See* UTAH CODE § 80-6-601. *See generally* UTAH R. JUV. P. 1–61.

[12] *See* UTAH CODE § 80-1-102(3) (defining adjudication), *id.* § 80-1-102(27) (defining disposition); *id.* § 80-6-610 (addressing disposition orders after an adjudication of delinquency).

[13] *Supra* ¶¶ 5, 29–33.

¶42 We agree with the majority on the basic framework for statutory interpretation. The court's primary goal when interpreting statutes is to "evince the true intent and purpose of the Legislature."[14] And to properly interpret these statutes, the court "look[s] at the provisions in the context of the entire statutory scheme."[15] But we disagree with the majority about what that context provides and what the plain language reflects.

¶43 We first address the decision-making scheme the nonjudicial adjustment statutes created. We start with the Juvenile Code's definition of "nonjudicial adjustment" as "closure of [a] case by the assigned juvenile probation officer, without an adjudication of the minor's case" with the consent of the probation officer and the minor, or the minor and the minor's parent, guardian, or custodian.[16] This process is designed to occur through the probation officers, without a formal adjudicatory proceeding with the court. And the route to a nonjudicial adjustment is straightforward, with some explicit, but limited, opportunities to shift routes to the prosecutor to begin an adjudicatory proceeding.

¶44 Utah Code sections 80-6-301 to -307 provide the roadmap to which route must be followed. They also define what each participant in the process can and cannot do.

¶45 Both routes begin at section 80-6-301 with a referral.[17] A referral is either a citation filed with the juvenile court or "a written report" by a law enforcement officer or certain others, "informing the juvenile court that an offense [was] committed by a minor . . . and the minor's case must be reviewed by a juvenile probation officer *or* a prosecuting attorney."[18] The disjunctive word "or"

---

[14] *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863 (cleaned up).

[15] *Anderson v. Utah Dep't of Com.*, 2025 UT 19, ¶ 15, 572 P.3d 373 (cleaned up); *see also supra* ¶ 21.

[16] UTAH CODE § 80-1-102(61).

[17] *Id.* § 80-6-301.

[18] *Id.* § 80-6-102(11) (emphasis added) (defining "formal referral"), *id.* § 80-6-102(14) (defining "referral" as a "formal referral" or a citation).

marks two alternatives,[19] flagging a fork in the road. The subsequent statutes prescribe which of those two routes to take. The matter either goes down the road of nonjudicial adjustments with a probation officer, or it goes down the road towards adjudication through a delinquency petition filed by the prosecutor. But at the outset, once the referral is filed, the probation officer is initially in the driver's seat.

¶46 Under section 80-6-302, when the juvenile court receives a referral, "a juvenile probation officer shall make a preliminary inquiry as to whether the minor is eligible for a nonjudicial adjustment."[20] The same language is repeated in section 80-6-303.5, which prescribes the probation officer's tasks. "If the juvenile court receives a referral for an offense committed by a minor . . . a juvenile probation officer shall make a preliminary inquiry . . . to determine whether the minor is eligible to enter into a nonjudicial adjustment."[21] If the probation officer determines the minor is eligible, then the officer must offer a nonjudicial adjustment.[22]

¶47 While the probation officer is initially at the wheel, there are prescribed off-ramps to shift the matter to the prosecutor for review. The inquiry shifts to the prosecutor in three instances: (1) when the probation officer requests it; (2) if the minor does not substantially comply with the agreed-upon nonjudicial adjustment; or (3) if the minor is not offered or declines a nonjudicial adjustment.[23] The probation officer may also shift the matter to a prosecutor for review if a risk and needs assessment indicates the minor is a high risk or if the assessment indicates a moderate risk and the referral involves a class A misdemeanor.[24] Here, the probation officer did not request the prosecutor to review the referral based on a risk assessment or other reasons, the minor

---

[19] *See Armenta v. Unified Fire Auth.*, 2025 UT 26, ¶ 34, 573 P.3d 1283.

[20] UTAH CODE § 80-6-302(7); *see also State v. Blake*, 2025 UT 21, ¶ 37, 582 P.3d 705 ("'Shall' is presumed to indicate a mandatory act . . . .").

[21] UTAH CODE § 80-6-303.5(1).

[22] *Id.* § 80-6-303.5(4).

[23] *Id.* § 80-6-304.5(1).

[24] *Id.* § 80-6-303.5(3)(a)(ii).

agreed to a nonjudicial adjustment, and she substantially complied with it.[25]

¶48   According to section 80-6-302, the road to prosecution can be followed only if (1) the minor is not eligible for, or does not complete, a nonjudicial adjustment *and* (2) the prosecutor conducts a particular three-part inquiry.[26] Both are required. So even if the prosecutor's inquiry would support a petition, a petition cannot be filed unless the minor is ineligible for a nonjudicial adjustment. This language is repeated again in section 80-6-304.5, which is the section that prescribes the prosecutor's authority. "A prosecuting attorney may not file a petition against a minor unless: the prosecuting attorney has statutory authority to file the petition under Section 80-6-305; . . . *and* the minor is not eligible for a nonjudicial adjustment under Section 80-6-303.5 . . . ."[27] The legislature repeated twice, in two sections, that the prosecutor may not file a petition if the minor is eligible for a nonjudicial adjustment.

¶49 Central then, to which road must be followed, is the minor's eligibility for a nonjudicial adjustment. Subsection 80-6-303.5(4) defines that eligibility. As recited by the majority, a nonjudicial adjustment must be offered when the minor (1) is "*referred for* an offense that is a misdemeanor, infraction, or status offense"; (2) "has no more than two prior adjudications"; and (3) "has no more than two prior unsuccessful nonjudicial adjustment attempts."[28] The triggering event in this statute is the

---

[25] The minor completed the community service required by the nonjudicial adjustment. The juvenile court had not yet ordered restitution, and so the minor had not paid restitution. But failure to pay a fine or fee cannot be used "as a basis for [the] filing of a petition." *Id.* § 80-6-304.5(4). Nor can a nonjudicial adjustment be denied if the minor is not able to pay. *Id.* § 80-6-304(5)(a). We conclude it is immaterial that restitution had not yet been ordered or paid but acknowledge that the case was not yet closed while a restitution order was still possible.

[26] *Id.* §§ 80-6-302(8), -304.5(3).

[27] *Id.* § 80-6-304.5(5)(a)–(b)(i) (emphasis added).

[28]   *Id.*   § 80-6-303.5(4)(a)   (emphasis added).   A   nonjudicial adjustment must also be offered if the offense occurred before the

(continued . . .)

referral. And the referral in this case was for a misdemeanor offense.

¶50 The majority focuses on subsection 80-6-303.5(8), which says when a probation officer may not offer a nonjudicial adjustment. "The juvenile probation officer may not offer a minor a nonjudicial adjustment if the referral involves . . . a felony offense."[29] The prosecutor filed a petition that alleged three felony offenses. And the majority concludes those alleged felonies mean the minor was not eligible for a nonjudicial adjustment.[30]

¶51 Here is where we diverge from the majority on the interpretive principles the court must apply. The majority views the nonjudicial adjustment statutes through the prism of the prosecutor's broad, general discretion to file, or not file, criminal charges.[31] That deference to prosecutorial discretion is understandable. This court has generally expressed reticence to second-guess a prosecutor's choices.[32] The majority also relies upon the interpretive tool that the legislature generally does not "hide elephants in mouseholes."[33] Under that principle, the court doesn't normally expect major changes—here, limiting prosecutorial

---

minor reached age twelve, or if the minor is referred for habitual truancy. *Id.* § 80-6-303.5(4)(b)–(c). Neither one is pertinent to this case.

[29] *Id.* § 80-6-303.5(8)(a)(i).

[30] *Supra* ¶¶ 29–33.

[31] *Supra* ¶¶ 32–33 (citing *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978), and *State v. Carter*, 578 P.2d 1275, 1277 (Utah 1978)).

[32] *See State v. Montiel*, 2005 UT 48, ¶ 14, 122 P.3d 571 (stating that "courts should be wary of second-guessing prosecutorial choices" in the context of rejecting plea bargains (cleaned up)).

[33] *See supra* ¶ 32 (citing *Burton v. Chen*, 2023 UT 14, ¶ 40 n.5, 532 P.3d 1005); *see also Feldman v. Salt Lake City Corp.*, 2021 UT 4, ¶ 52, 484 P.3d 1134; *Rutherford v. Talisker Canyons Fin., Co.*, 2019 UT 27, ¶ 53, 445 P.3d 474; *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) ("Congress, we have held, does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes.").

discretion to make charging decisions—without "textual clues about [the legislature's] intent."[34]

¶52  But the juvenile justice reforms and their revisions to the nonjudicial adjustment statutes are replete with those textual clues. First, the preliminary review is vested in the probation officer, with a review by the prosecutor only at the request of the probation officer or if the nonjudicial adjustment is otherwise not proceeding.[35] The statutes provide no additional offramps shifting the review to the prosecutor to divert the matter towards adjudication. Second, the existence of a felony is dependent on the referral document—a probation officer "may not offer a minor a nonjudicial adjustment *if the referral involves* . . . a felony offense."[36] There are two statutory interpretation principles at play here—one governing omissions and one about the words used.

¶53  The court presumes all omissions in statutory language to be purposeful.[37] At no point in the nonjudicial adjustment statutes does the statutory language provide for the prosecutor to intervene in the nonjudicial adjustment process beyond the three express opportunities—where a matter was referred to the prosecutor for review; where the minor declined or was not offered a nonjudicial adjustment; or where the minor did not substantially comply with the nonjudicial adjustment.[38] The majority asks that we create another off-ramp, to allow the prosecutor to independently second-guess the probation officer's review of the information in the

---

[34] *Burton*, 2023 UT 14, ¶ 40 n.5; *see also supra* ¶ 32.

[35] UTAH CODE § 80-6-302(7) ("If a juvenile court receives a citation . . . a juvenile probation officer shall make a preliminary inquiry as to whether the minor is eligible for a nonjudicial adjustment . . . ."), *id.* § 80-6-303.5(1) ("If the juvenile court receives a referral for an offense committed by a minor that is . . . within the juvenile court's jurisdiction, . . . a juvenile probation officer shall make a preliminary inquiry . . . to determine whether the minor is eligible to enter into a nonjudicial adjustment."), *id.* § 80-6-304.5(1) (listing the three instances when a prosecutor must review a referral).

[36] *Id.* § 80-6-303.5(8)(a)(i) (emphasis added).

[37] *Zilleruelo v. Commodity Transporters, Inc.*, 2022 UT 1, ¶ 19, 506 P.3d 509; *see also Marion Energy, Inc.*, 2011 UT 50, ¶ 14.

[38] *See* UTAH CODE § 80-6-304.5(1).

referral.[39] But to read or infer a different or additional intervention process into those statutes runs contrary to the statutory interpretation rule that the court is "not to infer substantive terms into the text that are not already there."[40]

¶54 The court also presumes "that the legislature used each word advisedly."[41] We therefore presume that the legislature acted intentionally when it said the probation officer may not offer a nonjudicial adjustment "if the referral involves . . . a felony offense."[42] We are unpersuaded that this language means the eligibility for a nonjudicial adjustment can be determined based on anything other than what is in the referral. The same statute, at section 80-6-303.5(4), mandates that the probation officer offer a nonjudicial adjustment if the minor "is referred for an offense that is a misdemeanor." The referral in this case was for an offense of misdemeanor assault. As a result, the prosecutor did not have unfettered discretion to independently determine this case involved three felony offenses when the referral was for one misdemeanor. The majority concludes the opposite.[43]

¶55 There could be understandable discomfort with endorsing this front-loaded evaluation and diversion process, where a charging decision is shifted largely to the person making the referral and to the probation officer who determines eligibility based on that referral. But it is not our role to question the wisdom of that system.[44] Our role is cabined to deciphering the system the

---

[39] *Supra* ¶¶ 31–33.

[40] *Berrett v. Purser & Edwards*, 876 P.2d 367, 370 (Utah 1994).

[41] *Colosimo v. Gateway Cmty. Church*, 2018 UT 26, ¶ 46, 424 P.3d 866 (cleaned up).

[42] UTAH CODE § 80-6-303.5(8)(a)(i).

[43] *Supra* ¶ 29 ("[N]othing in that statute makes that preliminary inquiry determinative. Nor does it make eligibility dependent upon the crime identified in the referral.").

[44] *Utley v. Mill Man Steel, Inc.*, 2015 UT 75, ¶ 48, 357 P.3d 992 (Durrant, C.J., concurring) ("[W]hen a statute is unambiguous, the statutory language is almost always irrefutable evidence of the legislature's intent, even if it leads to results we regard as impractical or ill-advised."); *see also West Jordan v. Morrison*, 656

(continued . . .)

legislature crafted, not avenues in that system the legislature did not include. If prosecutorial discretion overcomes that statutory scheme regardless of the limitations in the statutes, then the shifts the legislature made in the nonjudicial adjustment statutes become ephemeral.

¶56 In sum, the nonjudicial adjustment statutes provide prosecutors with only fettered discretion to make charging decisions. The statutory scheme is one that shifts the traditional process around, away from the prosecutor except in certain circumstances. That is the legislature's prerogative to do, as the court has recognized in other cases.[45] The juvenile justice system—and the role of nonjudicial adjustments within that system—was carefully crafted, and we decline to impute a pathway for prosecutors to supersede nonjudicial adjustments where the plain language of the statutes does not provide that pathway.

¶57 While we do not ordinarily include dicta in our opinions, we take this opportunity to note that many have contributed diligently to implement the juvenile justice reforms enacted by the legislature in 2017. Those contributors include judicial, legislative, and executive branch stakeholders, law enforcement, and prosecutors through the Utah Juvenile Justice Working Group and the Utah Commission on Criminal and Juvenile Justice.[46]

---

P.2d 445, 446 (Utah 1982) ("Where the ordinary meaning of the terms results in an application that is neither unreasonably confused, inoperable, nor in blatant contradiction to the express purpose of the statute, it is not the duty of this Court to assess the wisdom of the statutory scheme.").

[45] *Salt Lake City v. Peterson*, 2010 UT 64, ¶ 10, 245 P.3d 197 ("[T]he legislature has the authority to confer limited powers on non-public prosecutors." (cleaned up)); *State v. Robertson*, 924 P.2d 889, 891 (Utah 1996) (recognizing the legislature's ability to confer some prosecutorial power to nonelected officials).

[46] *See generally, e.g.*, *Nonjudicial Adjustment Process*, UTAH COMM'N ON CRIM. & JUV. JUST., https://justice.utah.gov/divisions-and-teams/juvenile-justice/over-sight-committee/nonjudicial-adjustments/ (last visited July 15, 2026); *Utah Juvenile Court: Nonjudicial Adjustment Process*, UTAH COMM'N ON CRIM. & JUV. JUST. (Nov. 14, 2019), https://justice.utah.gov/wp-

(continued . . .)

## CONCLUSION

¶58 The nonjudicial adjustment statutes created a particular system, shifting much of the responsibility to the probation officers, to evaluate cases and offer nonjudicial adjustments based on the information in the referrals filed at juvenile court. That new system prescribed limited off-ramps to shift cases to the prosecutors. We conclude those shifts were express and are supported by both the structure and language of the nonjudicial adjustment statutes. We would reverse the decision of the juvenile court.

————————

content/uploads/UTAH-JUVENILE-COURT_-NONJUDICIAL-ADJUSTMENT-PROCESS-May-2020.pdf (providing a flow chart and criteria for how juvenile matters move to nonjudicial adjustment or to prosecutors for delinquency petitions).